**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CASHONDRA FLOYD, Derivatively on Behalf of Nominal Defendant OLO, INC., <br><br>                 Plaintiff, <br><br>       v. <br><br> NOAH GLASS, BRANDON GARDNER, COLIN NEVILLE, DAVID FRANKEL, DANIEL MEYER, LINDA ROTTENBERG, RUSSELL JONES, ZUHAIRAH WASHINGTON, JAMES D. ROBINSON IV, DAVID CANCEL, and PETER J. BENEVIDES, <br><br>                 Defendants, <br><br>       and <br><br> OLO, INC., <br><br>                 Nominal Defendant. | Case No.: 1:23-cv-03770 <br><br><br> **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** <br><br><br> JURY TRIAL DEMANDED |

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff Cashondra Floyd ("Plaintiff"), by and through her undersigned attorneys, brings this derivative complaint for the benefit of nominal defendant Olo, Inc. ("Olo" or the "Company"), against current and former members of Olo's Board of Directors (the "Board") and certain of its executive officers seeking to remedy the Individual Defendants' (defined below) breaches of fiduciary duties and violations of federal law. Plaintiff alleges the following based upon personal knowledge as to herself and her own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Defendants' publicly available documents, conference call transcripts and announcements made by Defendants, United States Securities and Exchange

Commission ("SEC") filings, press releases published by and regarding Olo, legal filings, news reports, securities analysts' reports about the Company, and other publicly available information, including an amended class action complaint, captioned *Steamship Trade Association of Baltimore – International Longshoremen's Association Pesnion Fund v. Olo Inc., Noah Glass and Peter Benevides*, 1:22-cv-08228 (S.D.N.Y.) (the "Securities Amended Complaint" or "Sec. Am. Cplt."), in an action alleging violation of the federal securities laws by the Company and certain of its directors and officers (the "Securities Class Action").

## NATURE OF THE ACTION

1.     This is a shareholder derivative action brought on behalf of Olo against certain officers and members of the Company's Board for breaches of their fiduciary duties between at least August 10, 2021 and August 11, 2022 (the "Relevant Period") as set forth below.

2.     Olo is a software company established in 2005 by defendant Noah Glass that provides on-demand digital commerce operations to restaurants, enabling digital ordering, delivery, front-of-house management, and payments through various "modules." The various modules offered by Olo enables consumers to order directly from various individual restaurant locations through mobile and online ordering and/or indirectly through third-party applications, such as DoorDash and Uber Eats.

3.     In 2021, the Company capitalized on the dramatic increase in mobile and online food orders resulting from the Covid-19 pandemic by conducting an initial public offering ("IPO") in which it raised almost $520 million in gross proceeds. Olo's IPO registration statement and prospectus (the "Offering Documents") represented that it had "approximately 400 brand

customers representing over 64,000 active locations using our platform."[1]

4.      Throughout the Relevant Period, the "active locations" were cited as one of "3 key metrics" of Olo's performance and growth, and was repeatedly emphasized in press releases, presentations, SEC filings, and at business conferences. The number of active locations was represented as an indicator of the growth and scale of Olo's overall business, reflecting the Company's ability to attract, engage, and monetize customers, drive revenue, and expand the use of the Olo's modules. The Company represented that when restaurant brand clients signed up with Olo, all of its corporate and franchised locations were obligated to adopt and utilize the Company's technology.

5.      Throughout the Relevant Period, Olo reported growth in the number of active locations, increasing from 400 brands with about 74,000 active locations in August 2021 to more than 500 brands with about 76,000 active locations by the end of September 2021. By August of 2022, Olo reported that the number of active locations had grown to approximately 82,000. More than 50% of Olo's active locations at the start of the Relevant Period, however, were from only eight brands: Subway IP LLC ("Subway"), DairyQueen, Jimmy John's, Jack-in-the-Box, Panda Express, Five Guys, Denny's and IHOP.

6.      In February 2020, Olo announced that it had entered into a partnership with Subway through which more than 20,0000 of Subway's U.S. restaurants would utilize the Company's "Rails" module to process third-party orders from applications like DoorDash and Uber Eats. Under the partnership, Subway, comprising about 27% of the Company's active locations, became Olo's largest client.

---

[1] The Offering Documents defined "an active location as a specific restaurant that has deployed one or more of our modules."

7.     It was subsequently revealed, however, that the number Olo's active locations was inflated during the Relevant Period because the Company prematurely included locations that had not started using any of the Company's modules. Additionally, Olo failed to remove inactive locations from its location count so that locations which had stopped using Olo products were improperly counted as active. Likewise, contrary to the representations made during the Relevant Period, not all brand locations utilized Olo's platforms even after the brand entered into agreements with the Company.

8.     Moreover, the Individual Defendants failed to disclose that in or about January or February 2022, Subway informed Olo that it was terminating its relationship with the Company by the end of the year or in early 2023. The termination of the Company's partnership with Subway would cause a decline of approximately 27% of Olo's active locations.

9.     Even after receiving notice of Subway's termination of its partnership with Olo, however, certain Individual Defendants continued to tout Olo's growth prospects. For example, during a February 23, 2022 earnings call conducted in connection with the Company's full year 2022 financial guidance, defendant Peter J. Benevides ("Benevides"), the Company's Chief Financial Officer ("CFO"), stated that Olo's expectation was that it would grow the number of new active locations by the same number as in 2021. There was no mention of the termination of the Company's partnership with Subway or the loss of more than a quarter of the Company's current active locations during that call, or the adverse impact it would have on Olo's ability to increase the number of active locations.

10.     While in possession of the undisclosed information regarding the termination of the Subway partnership, Defendant Benevides and defendant Noah Glass ("Glass"), Olo's founder, Chief Executive Officer ("CEO") and member of the Company's Board, sold Company shares for

$1.5 million and $8.6 million, respectively, immediately upon expiration of the IPO lock-up period.

11.    After the close of the markets of August 11, 2022, the Company disclosed that it was aware of the termination of the Subway partnership prior to the issuance of the full year 2022 financial guidance provided in February 2022, and that 2,500 Subway locations had ceased using Olo's Rail module.  It was also revealed that the remaining Subway locations would be removed by the end of the fourth fiscal quarter of 2022 or the first quarter of 2023. As a consequence, there would be very little or no active location growth in 2022. Consequently, the Company significantly lowered its fiscal year 2022 guidance.

12.    The price of the Company's common stock dropped from $12.99 per share on August 11, 2022 to close at $8.26 per share on August 12, 2022, a 36% decline.

13.    On September 26, 2022, the Securities Class Action was filed in the United States District Court for the Southern District of New York alleging violations of the federal securities laws by the Company and Defendants Glass and Benevides. A motion to dismiss the Securities Amended was denied by the Court on April 10, 2023.

14.    As a direct and proximate result of the Individual Defendants' misconduct, the Company has incurred significant financial harm, including the costs of defending against and potential class-wide liability in the Securities Class Action, as well as additional damages, including reputational harm and loss of goodwill.

15.    Plaintiff did not make a demand on the Board because, as further detailed herein, demand would be a futile and useless act. Demand is excused because each member of the Board faces a substantial likelihood of liability for the misconduct alleged herein.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15. U.S.C. § 78j(b), Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f), and Rule 10b-5 promulgated under § 10(b) of the Exchange Act by the SEC (17 C.F.R. §240.10b-5).

17.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

18.     This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

19.     In connection with the acts, conduct and other wrongs complained of herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail, and the facilities of a national securities market.

20.     Venue is proper in this judicial District pursuant to 28 U.S.C. §1391(b) and §27 of the Exchange Act (15 U.S.C. §78aa(a)). At all relevant times, Olo was headquartered and conducted business in this District at 285 Fulton Street One World Trade Center, 82nd Floor New York, NY 10007. In addition, many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District.

## PARTIES

### *Plaintiff*

21.     Plaintiff is, and has been continuously throughout all times during the Relevant Period, the owner of Olo common stock.

*Nominal Defendant*

22.     Nominal defendant Olo is a corporation organized and existing under the laws of Delaware with its principal place of business in New York, New York. Olo develops and provides software to restaurants to enable online ordering and food-delivery. The Company's Olo's stock trades on the New York Stock Exchange under the ticker "OLO."

***Current and Former Director Defendants***

23.     Defendant Noah Glass is, and at all times relevant hereto has been, a member of the Company's board of directors (the "Board") and Olo's CEO. In 2021, Defendant Glass received $443,000 in salary, $9,339,129 in stock options, and $2,636,724 in incentive compensation, for total compensation in excess of $12.4 million. During the Relevant Period, Defendant Glass sold 288,000 shares of Olo stock for proceeds of approximately $8.6 million as specified below.

24.     Defendant Brandon Gardner ("Gardner"), Olo's co-founder, is, and at all times relevant hereto has been, the Company's Chairman of the Board and a member of the Board's Compensation Committee. In 2021, Defendant Gardner received $49,478 in cash compensation and stock awards valued at $199,350.

25.     Colin Neville is, and at all times relevant hereto has been, a member of the Company's Board and member of the Board's Audit Committee. In 2021, Defendant Neville received $30,000 in cash compensation and stock awards valued at $199,350.

26.     Defendant David Frankel ("Frankel") is, and at all times relevant hereto has been, a member of the Company's Board and member of the Board's Nominating and Corporate Governance Committee. In 2021, Defendant Frankel received $25,500 in cash compensation and stock awards valued at $199,350.

27.    Defendant Daniel Meyer ("Meyer") is, and at all times relevant hereto has been, a member of the Company's Board and Chair of the Board's Nominating and Corporate Governance Committee. Defendant Meyer Frankel received $28,500 in cash compensation and stock awards valued at $199,350.

28.    Defendant Linda Rottenberg ("Rottenberg") is, and at all times relevant hereto has been, a member of the Company's Board, Chair of the Board's Compensation Committee, and a member of the Board's Nominating and Corporate Governance Committee. In 2021, Defendant Rottenberg received $34,500 in cash compensation.

29.    Defendant Russell Jones ("Jones") is, and at all times relevant hereto has been, a member of the Company's Board and Chair of the Audit Committee. In 2021, Defendant Jones received $40,332 in cash compensation.

30.    Defendant Zuhairah Washington ("Washington") is, and since November 2020 has been, a member of the Company's Board and a member of the Board's Audit Committee. In 2021, Defendant Zuhairah received $32,169 in cash compensation.

31.    Defendant David Cancel ("Cancel") is, and since March 2022 has been, a member of the Company's Board and a member of the Board's Compensation Committee.

32.    Defendant James D. Robinson IV ("Robinson") was, until March 2022, a member of the Company's Board and a member of the Board's Compensation Committee.

33.    The defendants identified in paragraphs 23-32 are collectively referred to herein as the "Director Defendants."

**Officer Defendant**

34.    Defendant Peter Benevides ("Benevides") is, and at all times relevant hereto has been, Olo's CFO. Defendant Benevides is a Certified Public Accountant ("CPA").

35. Defendant Benevides and the Defendants identified in paragraphs 23-32 are collectively referred to herein as the "Individual Defendants."

***Non-Party Confidential Witnesses***

36. This action is based on Plaintiff's review, by counsel, of an extensive record of public documents as well as the allegations asserted in the Securities Amended Complaint, which contains detailed allegations based on interviews with several former Olo employees who, as confidential witnesses (referred to herein as "CWs"), provided information to the plaintiffs' counsel in the Securities Class Action supporting the allegations in that case.

## FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

37. By reason of their positions as officers and/or directors of Olo, and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed the Company and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Olo in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Olo and its shareholders.

38. Each director and officer of the Company owes to Olo and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligation of fair dealing.

39. The Individual Defendants, because of their positions of control and authority as directors and/or officers of Olo, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

40. Each Individual Defendant, by virtue of his or her position as a director and/or officer owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good

faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and/or officers of Olo, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

41.     As senior executive officers and/or directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on the NYSE, the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, financial statements, products, management, internal controls, earnings, and present and future business prospects, including the dissemination of false and/or materially misleading information regarding the Company's business, prospects, and operations, and had a duty to cause the Company to disclose in its regulatory filings with the SEC all those facts described in this Complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful, accurate, and fairly presented information.

42.     To discharge their duties, the officers and directors of Olo were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company. By virtue of such duties, the officers and directors of Olo were required to, among other things:

(i)     Ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Delaware and the United States, and pursuant to Olo's own Code of Business Conduct and Ethics;

(ii)     Conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(iii)    Remain informed as to how Olo conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(iv)    Establish and maintain systematic and accurate records and reports of the business and internal affairs of Olo and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(v)     Maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that Olo's operations would comply with all applicable laws and the Company's financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate;

(vi)    Exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate; and

(vii)   Examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above.

43.     At all times relevant hereto, the Individual Defendants were the agents of each other and of Olo and were at all times acting within the course and scope of such agency.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

44.    In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing. The Individual Defendants caused the Company to conceal the true facts as alleged herein. The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

45.    The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct was, among other things, to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty and unjust enrichment.

46.    The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company purposefully, recklessly, or negligently to conceal material facts, fail to correct such misrepresentations, and violate applicable laws.

47.    In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein.  Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants, who are directors or officers of Olo, was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

48.    Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with actual or constructive knowledge of the primary wrongdoing, either took direct part in, or substantially assisted the accomplishment of that wrongdoing, and was or should have been aware of his or her overall contribution to and furtherance of the wrongdoing.

12

49.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Olo and at all times acted within the course and scope of such agency.

## OLO'S CODE OF CONDUCT AND ETHICS

50.     The Code of Conduct and Ethics ("Code of Conduct"), approved by the Board on March 5, 2021, in pertinent part provided:

> Throughout our journey to get to where Olo is today, we have remained committed to our company values. We are equally committed to maintaining the highest standards of business conduct and ethics in our work.
>
> We characterize this commitment to conduct and ethics in a simple refrain: **_Use Good Judgment. Act with Integrity. Be Responsible._** [emphasis in original.]
>
> In short, we expect you to apply good judgment and the highest personal ethical standards in making business decisions. We expect you to follow the law. We expect you to act responsibly and respectfully.
>
> \*       \*       \*
>
> **1.     Honest and Ethical Conduct**
>
> It is our policy to promote high standards of integrity by conducting our affairs in an honest and ethical manner. Olo's integrity and reputation depends on the honesty, fairness and integrity brought to the job by each person associated with us. Unyielding personal integrity and sound judgment are the foundation of corporate integrity.
>
> **2.     Legal Compliance**
>
> Obeying the law is the foundation of this Code. Our success depends upon you operating within legal guidelines and cooperating with local, national and international authorities. We expect you to understand the legal and regulatory requirements applicable to your areas of responsibility. Violation of domestic or foreign laws, rules and regulations may subject an individual, as well as Olo, to civil and/or criminal penalties.
>
> **3.     Insider Trading**
>
> All non-public information about Olo or about other companies is considered confidential information. If you have access to confidential (or "inside")

information, you are not permitted to use or share that information for stock trading purposes. The use of material non-public information in connection with buying or selling securities, including "tipping" others who might make an investment decision on the basis of this information, is illegal. Please review Olo's Insider Trading Policy for more detailed information.

\*     \*     \*

**8.      Financial Integrity**

The integrity of our records and public disclosure depends upon the validity, accuracy and completeness of the information supporting the entries to our books of account. Therefore, our corporate and business records should be completed accurately and honestly. The making of false or misleading entries is strictly prohibited. Our records serve as a basis for managing our business and are important in meeting our obligations to customers, suppliers, creditors, employees and others. We also rely upon our accounting and other business and corporate records in preparing publicly-filed reports. Securities laws require that these reports provide full, fair, accurate, timely and understandable disclosure and fairly present our financial condition and results of operations. Employees who contribute in any way in preparing or verifying these reports should strive to ensure that our financial disclosure is complete, accurate and transparent.

## <u>OLO'S AUDIT COMMITTEE CHARTER</u>

51.      Olo's Audit Committee Charter, approved by the Board on March 5, 2021, provided, *inter alia*, that the "purpose of the Audit Committee" is to "review any reports or disclosures required by ***applicable law*** and stock exchange listing requirements" and "help the Board oversee the Company's ***legal and regulatory compliance*** . . . ." (Emphasis added).

52.      Among the responsibilities delegated to the Company's Audit Committee was the review of Olo's earnings announcements:

**Earnings Announcements.** The Committee will review and discuss with management and the Auditors any proposed earnings press releases and other financial information and guidance regarding the Company's results of operations provided publicly or to ratings agencies.

53.    In addition, the Audit Committee was charged with the review of the Company's management efforts to monitor compliance with applicable laws and the Company's Code of Conduct:

> **Ethical Compliance.** The Committee will review the results of management's efforts to monitor compliance with the Company's programs and policies designed to ensure compliance with applicable laws and stock exchange listing requirements, including the Company's Code of Business Conduct and Ethics.

## SUBSTANTIVE ALLEGATIONS

### *Background*

54.    Defendant Glass founded Olo in 2005 as "Mobo Systems, Inc.," operating under the name "GoMobo." At that time, the Company's core operation was the creation of a directory of restaurants where consumers could advance order get food on the go. In 2010, the Company started doing business under "Olo," short for "Online Ordering," and shifted its focus to providing restaurants with a tool to create their own branded online and mobile ordering services. In January 2020, the name of the Company was formally changed to Olo.

55.    The Company conducted an IPO on March 17, 2021, issuing 20,700,000 shares of Class A common stock at $25.00 per share, pursuant to the Offering Documents. The IPO generated $517.5 million in gross proceeds.

56.    Olo offered two products, or modules, for online and mobile ordering at that time, "Order Management" and "Delivery Enablement" solutions. Olo's "Order Management" solution allowed consumers to interact directly with a restaurant location through a suite of digital commerce channels, such as restaurant-branded mobile applications and websites, as well as enabling telephone orders. It also allowed for the storage and hosting of restaurant menus, creation and management of promotional offers and loyalty/reward programs, the synchronization of menu item availability, the modification of ingredients, and per-location pricing. The Order Management

15

solution was also connected to each restaurant's point-of-sale system. Order Management also included a "Network" module, which allows brands to connect directly with consumers through Google and Maps pages and applications; a "Switchboard" module, which centralizes inbound phone orders; a "Kiosk"module, that was a digital interface for a physical ordering device located inside the participating restaurant; and a "Virtual Brands" module, a digital and delivery-only service for restaurants that do not have their own physical locations and instead use host kitchens to produce their food for digital-and-delivery-only ordering.

57.     The Company's "Delivery Enablement" solution connected restaurants indirectly to consumers through third-party applications. There are two significant modules within this solution: "Dispatch" and "Rails," which was used by Subway. Dispatch enables orders directly from a restaurant's digital ordering channel, such as its website, which is delivered by a third-party delivery service provider (a "DSP"). Rails enables the integration of a restaurant's menu and pricing into a third-party application or website for pick-up or delivery by that third-party. At the start of the Relevant Period, Olo's third-party Rails partners included "all major national digital ordering aggregators," including Caviar, DoorDash, Grubhub, Postmates, Seamless, and Uber Eats, each of which were also members of Olo's DSP network, as well as "regional and local aggregators that are meaningful to operators in specific geographies."

58.     During the Relevant Period, most of Olo's revenue consisted of "platform revenue" including both subscription and transaction-based revenue streams. Subscription revenue was earned from fixed monthly subscription fees from each restaurant location subscribing to Olo's Ordering module. Some restaurant locations purchase an allotment of monthly orders for a fixed monthly fee and then pay an additional fee for each excess order utilizing the Company's Ordering module, which Olo also classifies as subscription revenue. Transaction revenue is earned from

individual orders on a per order, per location basis from each restaurant location that subscribes to Olo's Dispatch and Rails modules.

59.     During the Relevant Period, Olo's clients included a wide variety of restaurants, including quick service restaurants ("QSRs"), which are fast-food restaurants, as well as casual and family dining restaurants, and coffee and snack food restaurants.

60.     The majority of Olo's restaurant clientele consisted of QSRs, including Subway, DairyQueen, Krystal, Jimmy John's, Jack in the Box, Checkers, Del Taco, and Panda Express. During an August 10, 2021 earnings call, Defendant Glass stated:

> As the largest component of the restaurant industry by both locations and transactions, QSR brands represent the greenfield[2] industry segment that we love for its high average location count, industry transaction share and cornerstone commitments to convenience.

61.     In its periodic and annual reports filed with the SEC during the Relevant Period, Olo stated that it typically entered into three-year contracts with continuous one-year automatic renewal periods with its clients. The Company claimed this provided "visibility into [the Company's] future financial performance."

62.     During the Relevant Period, the Company repeatedly emphasized that its key metrics were active locations, average revenue per unit ("ARPU"), and net revenue retention. Active locations were defined as an individual restaurant location live on the platform with at least one product module. ARPU represents the average quarterly platform revenue Olo earned on a per-location basis.

---

[2] "Greenfield industry segment" refers to an unexplored industry segment investment opportunity.

63.     Olo counted each restaurant brand's individual restaurant location as a separate active location. At a May 23, 2022 JP Morgan Global Technology, Media & Communications Conference, Defendant Glass stated:

> So we sell into one brand decision maker and then we[']re ***adopted by all of the restaurant locations within that brand***, the corporate-owned locations, the franchise locations, the mix of the 2, however, they're set up in their organizational structure. And then brands are always going live really all at the same time to create that consistent experience everywhere. So yes, we are deployed in all locations.

(Emphasis added).

64.     Olo announced its partnership with Subway on February 12, 2020, by which Subway would utilize the Company's Rails module to connect to the third-party market. According to a press release announcing the partnership, "[t]he partnership allows Subway's network of more than 20,000 U.S. restaurants to more seamlessly handle digital orders from third-party marketplaces." Through that partnership, Subway became Olo's largest brand client.

65.     According to the former Olo employee identified as CW3 in the Securities Amended Complaint, who worked as Technical Specialist, given Subway's position as Olo's most important client, Olo was always "'all hands on deck'" for any Subway request, even if it required putting other pending projects and/or requests from other clients on hold. (Sec. Am. Cplt., ¶ 46).

66.     CW4, a Senior Software Engineer who was employed by Olo from May 2017 through April 2022, confirmed that Subway was "'very important'" to Olo's business, and explained that the sentiment in Olo was that Subway always needed to be "'taken care of.'" CW4 stated that Subway prevented Olo from adding any new features, except for those requested by Subway. (Sec. Am. Cplt., ¶ 47).

67.     In late January or early February of 2022, Subway informed Juan George, Olo's Senior Vice president of Enterprise Sales, that Subway was going to terminate its relationship with

the Company. Subway stated that it wanted a single product to connect all Subway locations globally to third-party applications and, because Subway had its own in-house technical staff and infrastructure, it would utilize its own technology to connect to third-party applications, instead of using Olo's Rails module.

68.     The termination of the Subway partnership was announced to Olo employees internally at a "town hall" meeting for the Company's staff. According to a former Olo employee identified as CW6 in the Securities Amended Complaint, Defendant Glass announced that Subway was discontinuing its partnership with Olo at a town hall meeting in early 2022. (Sec. Am. Cplt., ¶ 52). This was confirmed by a former Olo employee identified as CW7 in the Securities Amended Complaint.  (Sec. Am. Cplt., ¶ 53).

***Materially False and Misleading Statements and Omissions***

69.     The Individual Defendants caused, or recklessly failed to prevent, the Company's issuance of materially false and misleading statements in the periodic and annual reports Olo filed with the SEC during the Relevant Period. Specifically, the Company prematurely included thousands of individual restaurant locations in the active locations count before those locations actually utilized any of Olo's products or had rejected use of the Company's products, and also failed to remove inactive locations from the Company's active locations count.

70.     Moreover, the Individual Defendants caused, or recklessly failed to prevent, the Company's issuance of materially false and misleading statements regarding Olo's business relationship with Subway. Specifically, that in early 2022, Subway had informed Olo that it was terminating its partnership with the Company and that all Subway locations would stop using Olo's Rails module by the end of 2022 or early 2023.

71.     On August 10, 2021, the Company issued a press release and filed a Form 10-Q with the SEC reporting the Company's second quarter 2021 earnings. Olo reported a 30% increase, year-over-year, in active locations, bringing the total to approximately 74,000. In an earnings call that same day, Defendant Benevides told analysts, "I think the big takeaway here is a lot of upside when you think about the 75,000 – 74,000 restaurant locations on the platform today."

72.     In a November 2021 analysts' call regarding the Company's third quarter 2021 results, Brad Reback of Stifel, Nicolaus & Company asked, "[a]s we look forward, what should we think of as the durable growth rate of the business?" Defendants Benevides answered, "[a]s we look ahead, we see a lot of opportunity for growth and a lot of different levers to pull to get there. I think in the most simplest form, continuing to add more active locations to the platform."

73.     On January 10, 2022, Olo gave a presentation at an ICR Conference. During the presentation, Defendant Glass stated, "[t]oday we are a proud partner to over 500 restaurant brands representing 76,000 individual restaurant locations to enable consumers to order ahead, pay ahead and get their food faster for takeout, delivery and more." Defendant Benevides also stated "[w]e also contract directly, or always contract directly, with brand headquarters to long-term exclusive contracts and secure all locations within the brand, ensuring end consumer experience is consistent, regardless of which location within a brand the end consumer interacts with."

74.     On February 23, 2022, Olo issued a press release concerning the Company's fourth quarter 2022 results. The press release stated that Olo's "[e]nding active locations increased 23% year-over-year to approximately 79,000." On the conference call with analysts later that day, Defendant Glass stated that "[w]e ended the year with our platform connecting approximately 79,000 active restaurant locations . . ."

75.     In a May 10, 2022 press release, Olo stated that "[e]nding active locations increased 19% year-over-year to approximately 82,000."  In a conference call with analysts that same day, Defendant Glass stated, "[o]ur ending active location counts increased 19% year-to-year to approximately 82,000, and we surpassed more than 600 restaurant brands utilizing our platform." Glass also stated, "we always sell to the brand, and then we're adopted across the entire location base, whether those are corporate owned or franchise owned."

76.     On May 23, 2022, the Company gave a presentation at a JPMorgan Technology, Media & Communications Conference. One analyst asked, "when Olo signs on a large enterprise, are all of the franchises obligated to come onto the platform? And what does that process look like?" Defendant Glass responded:

> So we sell into one brand decision maker and then we[']re adopted by all of the restaurant locations within that brand, the corporate-owned locations, the franchise locations, the mix of the 2, however, they're set up in their organizational structure. nd then brands are always going live really all at the same time to create that consistent experience everywhere. So yes, we are deployed in all locations.

> *     *     *

> I really believe that we've demonstrated that we can start a relationship with even the largest restaurant brands out there with a single module and maybe that's a convenient way for them to fortify their internal efforts, prove ourselves out and then expand into a larger deployment.

77.     On June 6, 2022, Olo gave a presentation at the William Blair Growth Stock Conference. At that conference, Defendant Glass stated:

> Unlike other enterprise software businesses where the sales teams works to add a single location or division and expand to others, Olo enters into relationships at the brand's corporate level and secures exclusivity across all company owned and franchisee locations. And this enables us to deploy our modules across all existing and new brand locations without any additional sales and marketing costs and upsell new offerings to the brand itself rather than each individual location.

> *     *     *

Since 2018, we have increased total active restaurant locations from 35,000 to 82,000 representing a compound annual growth rate north of 30 percent demonstrating our ability to empower enterprise restaurant brands in a total addressable market of roughly 300,000 locations.

78.     The foregoing statements were materially false and misleading because Olo prematurely included restaurant locations in its active locations count prior to the actual adoption and use of any Olo products. According to a former Company employee identified in the Securities Action Complaint as CW1, a Delivery Solutions Manager within Olo's Dispatch module segment from December 2020 to August 2021, CW1 Was instructed to prematurely report the number total contracted locations as active locations before the locations were, in fact, active. (Sec. Am. Cplt, ¶ 86). Thus, while Olo announced on August 10, 2021 that Jack in the Box, with 2,200 locations, joined Olo in or about June 2021, by the end of the second quarter of 2021, CW1 stated that Jack in the Box only had about 200 locations using the Company's Dispatch platform. (*Id*.). When CW1 left Olo in August 2021, about 30% of Jack in the Box's locations were still not using Olo's module. (*Id*.). CW1 further stated that multiple locations operated of regional casual dining restaurants operated by Berg Hospitality Group and Newport Restaurant Group were counted as active locations even though they had not started using the Company's module. Indeed, according to CW1, several of the locations were still under construction and not yet operational. (Sec. Am. Cplt., ¶ 86).

79.     Olo also failed to remove inactive locations from the active locations count.  CW1 stated that there were discrepancies between the reported active location count and the restaurants actually using Olo's modules because of individual locations turning off the Company's modules due to issues of keeping up with customer demand or because restaurants had shut down during the Covid-19 pandemic. When CW1 asked Cw1's supervisor if the inaccurate count of active

locations should be corrected, CW1 was told to keep reporting all locations as active. (Sec. Am. Cplt., ¶ 88).

80.     The statements concerning brand adoption and active locations count were also materially false and misleading because not all brand locations used Olo's modules. A former employee identified in the Securities Action Com[plaint as CW2, who worked at the Company as a Deployment Manager from March 2021 through February 2022, stated that not all franchises under a specific brand used the Company's products despite Olo's statements. CW2 stated that only about 50% of the franchises of CKE, the parent of Carl's Jr. Restaurants LLC, Hardee's Restaurants LLC, and others, decided to use the Company's products. Although the franchises comprised 90% of CKE's 4,000 individual locations, Olo included all 4,000 restaurants as active locations. (Sec. Am. Cplt., ¶ 91).

81.     In addition, the Individual Defendants issued, or caused the Company to issue, materially false and misleading statements regarding the status of Olo's business relationship with Subway. On a February 23, 2022 earnings call – after Subway had informed Olo that it would terminate its relationship with the Company by year-end, or shortly thereafter – Defendant Glass stated "[a]s we enter 2022, we've never been more confident in our position and more excited about the opportunity ahead."  Defendant Glass continued, "[w]e believe that we have 100x growth opportunity in U.S. enterprise restaurants, representing . . . [total addressable market] of more than $1.5 billion within the U.S. enterprise segment."

82.     Likewise, on that same call Defendant Benevides stated, "throughout 2022, we believe the main drivers of revenue growth will be ARPU expansion as well as increasing the number of active locations on the platform." Defendants Benevides continued, "[r]elated to ARPU, we expect year-over-year growth to be around 10% as order volumes continue to grow and brands

adopt additional product modules." Benevides also stated that "[w]e're confident that these investments will unlock future growth opportunities for Olo in 2023 and beyond. To summarize, we delivered another strong quarter of operational and financial performance."

83.     When asked if Olo will "add sort of the same or maybe more locations in 2022" as over the past year, Defendant Benevides stated, "[y]es. So our expansion for 2022 is to add a similar amount of net new locations to the platform, coupled with full year growth of ARPU of around 10%. . . . And for 2022, again, we're targeting a similar number of net adds as we achieved in 2021."

84.     At the May 23, 2022 JPMorgan Global Technology, Media & communications Conference, Defendant Benevides was asked about the durable growth rate for the business and he replied:

> So I think what we've communicated is we feel pretty confident in being able to deliver high growth we define as 30% year-on-year growth. Noah articulated earlier, the 100x opportunity in front of us. And when we look at all those different avenues, more locations, more transactions per location and more revenue per transaction, there's just a lot of levers that we can pull in order to maintain that growth rate.

85.     During a June 6, 2022 presentation at the William Blair Growth Stock Conference, Defendant Glass stated:

> Our solutions set that meets the needs of a digital restaurant, robust network, and highly efficient go-to-market give us confidence that we have long runway for growth ahead of us. We believe that we have a 100x growth opportunity in U.S. enterprise restaurants representing a total addressable market of more than $15 billion. First, through continuing to focus on the enterprise restaurant segment, we have a 4x opportunity to capture all 300,000 enterprise restaurant locations.

Defendant Glass further stated "[a]ltogether, these three levers result in Olo's near-term 100x revenue growth opportunity in U.S. enterprise restaurants, more locations, more orders per location, and more revenue per order."

86.    With regard to Olo's guidance, Defendant Glass stated:

To summarize, we continue to deliver revenue growth and profitability as we take meaningful strides towards driving digital hospitality. Our position is strong as we have a long runway for growth through adding more locations, cross selling our robust and comprehensive product suite, and through expanded use cases of the Olo platform.

87.    The foregoing statements were materially false and misleading because they failed to disclose that the Company's largest customer, Subway, had already informed Olo that it would be terminating its business relationship with the Company at or about the end of the year. Accordingly, Olo would not be able to achieve the location growth described by Defendants Glass and Benevides, achieve the expanded use of Olo's products on a year-to-year basis, or continue to provide revenue growth. In addition, the statements concerning the active locations were materially false and misleading because the number was inflated by the inclusion of locations that did not utilize Olo's products, or had discontinued the use of the Company's products.

### The Truth Is Revealed

88.    After the close of the markets on August 11, 2022, Olo issued its second quarter 2022 earnings results, reporting shortfalls across multiple metrics, including revenues, cash flow, and active locations. In fact, the Company reported no growth in active locations over the quarter. The Company revised its fiscal year 2022 financial estimates, lowering its revenue guidance from $195-$197 million to $183-$184 million.

89.    During an earnings call on that same day, it was finally disclosed that Subway had decided not to renew its contract with Olo, eliminating approximately 2,500 locations in the quarter, and eliminating the rest of its locations by the fourth quarter of 2022, or the first quarter of 2023. Defendant Benevides acknowledged that the loss of Subway "will likely impact our

ending active location counts in the fourth quarter of this year or the first quarter of 2023," causing Olo to add only 2,000 locations for the rest of the year, or only 4,000 locations in total.

90.     When asked if the 2022 guidance issued in February 2022 accounted for the revenues lost from Subway, Defendant Benevides stated:

> So when we entered the year, there was indication that Subway may plan to directly integrate with marketplaces. But at that point in time, the time line was unclear. So like all data points and assumptions that feed the model, we took that information, we factored in the possibility that Subway may integrate directly by doing 2 things: one, reducing their transaction volumes throughout the year and in turn, reducing a portion of their revenue contribution throughout the year. So as that has begun to happen, the guidance for both the third quarter and the full year are aligned.

91.     During that call, RBC Capital analyst Matthew Hedberg stated, "just to be clear, when you started the year, you've assumed less Subway contributions and it seems like that is playing out." Benevides stated that "what we had done entering the year is really start to tail that off in the second quarter through the balance of the year, really as a hedge to some of the indications that we had heard as we entered the year."

92.     To explain the reduced 2022 guidance, despite purportedly making allowance for the loss of Subway in February 2022, Olo cited "macroeconomic challenges" with the brands and location operators causing delays in deployment with an adverse revenue impact in the second half of 2022.

93.     This explanation, however, contradicted Defendant Glass' statements at the May 23, 2022 JPMorgan Conference where he said:

> [E]ven during a recession, if we had a recession, and we've seen this in 2008, '09, they [consumers] have to eat 3 times a day or more. They don't magically start cooking, consumers go to restaurants, they get food at restaurants, and they trade down from the high-end restaurants to the lower-cost restaurants.
>
> And that is something that has been a tailwind for our business in past recessions as it's been a benefit to our restaurant customers, picking up order volume.

In other words, Glass had previously indicated that adverse macroeconomic conditions would be a benefit, not a detriment, to the Company's business.

94.     Toast, Inc. a cloud-based all-in-one digital technology platform that provides Restaurants a comprehensive suite of SaaS, products, financial technology solutions, including integrated payment processing – and one of Olo's primary competitors – increased in guidance while citing macroeconomic conditions the same day that Olo lowered its guidance.

95.     The price of Olo's dropped 36%, from a close of $12.99 per share on August 11, 2022 to a close of $8.26 per share on August 11, 2022.

***Insider Sales***

96.     During the Relevant Period, Defendants Glass and Benevides engaged in insider sales of Olo common stock while in possession of adverse information regarding the termination of the partnership between Olo and Subway, the inflated active locations count, and the Company's projected revenues.

97.     Specifically, Defendant Glass engaged in the following sales transactions during the Relevant Period:

| Date | Number of Shares | Proceeds |
|---|---|---|
| 9/15/21 | 95,840 | $3,050,000 |
| 10/1/21 | 57,810 | $1,730,000 |
| 10/4/21 | 38,030 | $1,070,000 |
| 11/5/21 | 10,660 | $ 299,040 |
| 11/8/21 | 85,190 | $2,590,000 |
| 3/7/22 | 3,870 | $46,590 |
| 6/6/22 | 3,730 | $ 40,490 |
| | **Total** | **$8,826,129** |

98.     Defendant Benevides engaged in the following sales transactions during the Relevant Period:

| Date | Number of Shares | Proceeds |
|------|------------------|----------|
| 10/28/21 | 9,000 | $242,820 |
| 10/29/21 | 9,000 | $243,700 |
| 11/22/21 | 9,000 | $231,030 |
| 11/23/21 | 5,530 | $139,860 |
| 3/7/22 | 1,770 | $21,160 |
| 6/6/22 | 1,700 | $18,500 |
| **Total** | | **$897, 070** |

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

99.     Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of the breaches of fiduciary duties by the Individual Defendants.

100.    Olo is named solely as a nominal party in this action.  This is not a collusive action to confer jurisdiction on this Court that it would otherwise not have.

101.    Plaintiff is a current shareholder of Olo and was a continuous shareholder of the Company during the period of the Individual Defendants' wrongdoing alleged herein. Plaintiff will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights and retained counsel competent and experienced in derivative litigation.

102.    At the time this action was commenced, the nine-member Board was comprised of Defendants Glass, Gardner, Neville, Frankel, Meyer, Rottenberg, Jones, Washington, and Cancel. Accordingly, Plaintiff is only required to show that five of the Director Defendants cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action. As set forth below, all of the Board's current directors are incapable of

making an independent and disinterested decision to institute and vigorously prosecute this action, including because they face a substantial likelihood of liability, and so demand on the Board to institute this action is not necessary because such a demand would have been a futile act.

103.    The Director Defendants, together and individually, violated and breached their fiduciary duties of candor, good faith, and loyalty. Specifically, the Director Defendants, knowingly approved and/or permitted the wrongs alleged herein, and they participated in efforts to conceal those wrongs. The Director Defendants authorized and/or permitted the issuance of various false and misleading statements, authorized and/or permitted the false statements to be disseminated directly to the public and made available and distributed to shareholders, are principal beneficiaries of the wrongdoing alleged herein, failed to take any action to recover the illicit proceeds of the insider sales, and thus, could not fairly and fully prosecute such a suit even if they instituted it.

104.    The Director Defendants either knowingly or recklessly issued or caused the Company to issue the materially false and misleading statements alleged herein, and/or failed to take any action to recover from the Individual Defendants who wrongfully profited from the issuance of those materially false and misleading statements. The Director Defendants knew of the falsity of the misleading statements at the time they were made, and/or upon learning of their falsity failed to clawback the illicit proceeds of insider sales made by the Individual Defendants who made such statements. As a result of the foregoing, the Director Defendants breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested, and demand upon them is futile, and thus excused.

105.    As members of the Board charged with overseeing the Company's affairs, each of the Director Defendants had knowledge, or the fiduciary obligation to inform themselves, of

information pertaining to the Company's core operations and the material events giving rise to these claims, and/or the duty to preserve the Company's assets. Specifically, as Board members of Olo, the Director Defendants knew, or should have known, of the material facts surrounding the termination of the Company's relationship with Subway, and the overstated number of active locations, and the materially misleading revenue projections predicated, in significant part, on the inflated number of active locations, and/or should have caused the Company to take action to clawback the proceeds of the insider sales based on the misappropriation of the undisclosed adverse information about Olo.

106.    Moreover, the Director Defendants willfully ignored, or recklessly failed to inform themselves of, the obvious problems with the Company's internal controls, practices, and procedures, and failed to make a good faith effort to correct the problems or prevent their recurrence, and/or clawback the illicit proceeds of wrongful insider sales.

107.    In addition, Defendants Neville, Jones, and Washington are not disinterested or independent, and therefore, are incapable of considering a demand because they serve or have served as members of the Audit Committee during the relevant period and, pursuant to the Audit Committee Charter, were specifically charged with the responsibility to assist the Board in fulfilling its oversight responsibilities related to, inter alia, the Company's public disclosures concerning, inter alia, Olo's active location count and revenue projections. These Defendants, however, breached their fiduciary duties to the Company by failing to prevent, correct, or inform the Board of the issuance of material misstatements and omissions regarding the active locations count and the revenue projections based on that count. Therefore, Defendants Neville, Jones, and Washington cannot independently consider any demand to sue themselves for breaching their fiduciary duties to the Company, as that would expose them to substantial liability and threaten

their livelihood.

108.    The Director Defendants, as members of the Board, were and are subject to the Company's Code of Conduct. The Code of Conduct goes well beyond the basic fiduciary duties required by applicable laws, rules, and regulations, requiring the Individual Defendants to also adhere to Olo's standards of business conduct. The Director Defendants violated the Code of Conduct because they knowingly or recklessly engaged in and participated in making and/or causing the Company to make the materially false and misleading statements alleged herein. Because the Director Defendants violated the Code of Conduct, they face a substantial likelihood of liability for breaching their fiduciary duties, and therefore demand upon them is futile.

109.    Further, each of the Director Defendants received payments, benefits, stock options, and other emoluments by virtue of their membership on the Board and their control of the Company.

110.    The Director Defendants derive substantial revenue from the Company, control the Company, and are indebted to each other. These conflicts of interest have precluded the directors from adequately monitoring the Company's operations and internal controls and calling into question the other Individual Defendants' conduct.  Thus, any demand on the current Board would be futile.

111.    Significantly, none of the Director Defendants have taken remedial action to redress the conduct alleged herein. For instance, none of the Company's current directors have sought to clawback the proceeds of the illicit insider sales conducted in violation of the Company's "Insider Trading" policy, which provides:

> All non-public information about Olo or about other companies is considered confidential information. If you have access to confidential (or "inside") information, you are not permitted to use or share that information for stock trading purposes. The use of material non-public information in connection with buying or

selling securities, including "tipping" others who might make an investment decision on the basis of this information, is illegal.

112.    The Director Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the directors can claim exculpation from their violations of fiduciary duty pursuant to the Company's charter. As a majority of the directors face a substantial likelihood of liability, they are self-interested in the transactions challenged herein. They cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company. Accordingly, demand is excused as being futile.

113.    The acts complained of herein constitute violations of fiduciary duties owed by Olo officers and directors, and these acts are incapable of ratification.

114.    The Director Defendants may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds i.e., monies belonging to the stockholders of Olo. If there is a directors' and officers' liability insurance policy covering the Individual Defendants, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Individual Defendants, known as, inter alia, the "insured-versus-insured exclusion." As a result, if the Director Defendants were to sue themselves or certain officers of Olo, there would be no directors' and officers' insurance protection. Accordingly, the Director Defendants cannot be expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists, will provide a basis for the Company to effectuate a recovery. Thus, demand on the Director Defendants is futile and, therefore, excused.

115.    If there is no directors' and officers' liability insurance, then the directors will not cause Olo to sue the Defendants named herein, since, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event as well.

116.    Thus, for all of the reasons set forth above, all of the directors are unable to consider a demand with disinterestedness and independence. Consequently, a demand upon the Board is excused as futile.

## COUNT I

**(Against Defendants Glass and Benevides for Violations of Sections 10(b), 20(a) and 21D of the Exchange Act)**

117.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

118.    The Company, along with Defendants Glass and Benevides, were named as defendants in the Securities Class Action, which asserted claims under the federal securities laws for violations of Sections 10(b) and 20(a) of the Exchange Act.

119.    If the Olo is found liable in the Securities Class Action for violations of the federal securities law, the Company's liability will, in whole or part, be due to the willful and/or reckless violations of Defendants Glass and Benevides of their obligations as directors and/or officers of the Company.

120.    Moreover, through their positions of control and authority as officers of the Company, Defendants Glass and Benevides were able to and did, directly and/or indirectly, exercise control over the business and corporate affairs of the Company, including the wrongful acts described in the Securities Class Action and herein.

## COUNT II

**(Against the Individual Defendants for Breach of Fiduciary Duty)**

121.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

122.     The Individual Defendants owed the Company fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed the Company the highest obligation of good faith, fair dealing, loyalty, and due care.

123.     The Individual Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

124.     The Individual Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties. Among other things, the Individual Defendants breached their fiduciary duties of loyalty and good faith by permitting the use of inadequate practices and procedures to guide the truthful dissemination of Company news to the investing public and to the Company's shareholders, allowing or permitting false and misleading statements to be disseminated in the Company's SEC filings and other disclosures, and otherwise failing to ensure that adequate internal controls were in place regarding the serious business reporting issues and deficiencies described above.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

125.     As a direct and proximate result of the Individual Defendants' failure to fulfill their fiduciary obligations, the Company has sustained significant damages.

126.     As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company. As a direct and proximate result of the Individual Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill. Such damage includes, among other things, costs incurred in defending itself in the Securities Class Action, exposing the Company to millions of dollars in potential class-wide damages in the Securities Class Action, and damage to the share price of the Company's stock, resulting in an increased cost of capital, and reputational harm.

127.    Plaintiff, on behalf of Olo, has no adequate remedy at law.

## COUNT III

**(Against the Individual Defendants for Aiding and Abetting Breach of Fiduciary Duty)**

128.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

129.    By encouraging and accomplishing the illegal and improper transactions alleged herein and concealing them from the public, the Individual Defendants have each encouraged, facilitated, and advanced their breaches of their fiduciary duties. In so doing, the Individual Defendants have each aided and abetted, conspired, and schemed with one another to breach their fiduciary duties, waste the Company's corporate assets, and engage in the ultra vires and illegal conduct complained of herein.

130.    Plaintiff, on behalf of Olo, has no adequate remedy at law.

## COUNT IV

**(Against the Individual Defendants for Waste of Corporate Assets)**

131.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

132.    The wrongful conduct alleged regarding the issuance of false and misleading statements was continuous, connected, and on-going throughout the time period in issue. It resulted in continuous, connected, and ongoing harm to the Company.

133.    As a result of the misconduct described above, the Individual Defendants wasted corporate assets by, inter alia: (i) paying and collecting excessive compensation and bonuses; and (ii) incurring potentially millions of dollars of legal liability and/or legal costs, including defending against the Securities Action.

134.    As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

135.   Plaintiff, on behalf Olo, has no adequate remedy at law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.   Declaring that Plaintiff may maintain this derivative action on behalf of Olo and that Plaintiff is a proper and adequate representative of the Company;

B.   Awarding the Company damages in an amount to be determined at trial as a result of the Individual Defendants' violation of securities law, breaches of fiduciary duties and waste of corporate assets;

C.   Directing Olo to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Olo and its shareholders from a repeat of the damaging events described herein, including, but not limited to:

- strengthening the Board's supervision of operations and compliance with applicable state and federal laws and regulations;

- strengthening the Company's internal reporting and financial disclosure controls;

- developing and implementing procedures for greater shareholder input into the policies and guidelines of the Board; and

- strengthening the Board's internal operational control functions;

D.   Awarding to Olo restitution from the Individual Defendants;

E.   Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F.   Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: May 4, 2023

**RIGRODSKY LAW, P.A.**

By:  */s/ Timothy J. MacFall*
Seth D. Rigrodsky
Timothy J. MacFall
Gina M. Serra
825 East Gate Boulevard, Suite 300
Garden City, New York 11530
Telephone: (516) 683-3516
Facsimile: (302) 654-7530
Email: sdr@rl-legal.com
        tjm@rl-legal.com
        gms@rl-legal.com

**GRABAR LAW OFFICE**
Joshua H. Grabar
One Liberty Place
1650 Market St., Suite 3600
Philadelphia, PA 19103
Telephone: (267) 507-6085
Email: jgrabar@grabarlaw.com

*Attorneys for Plaintiff*